**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

LEE FOSTER,                          :

     Plaintiff,                     :

vs.                                  :        CA 12-0692-C

CAROLYN W. COLVIN,                   :
Acting Commissioner of Social Security,
                                     :
     Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 20 & 21 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of the parties at the July 22, 2013 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 20 & 21 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

Plaintiff alleges disability due to degenerative disc disease and chronic low back pain. The Administrative Law Judge (ALJ) made the following relevant findings:

**1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.**

**2.    The claimant has not engaged in substantial gainful activity since September 1, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).**

**3.    The claimant has the following severe impairments: degenerative disc disease and chronic low back pain (20 CFR 404.1520(c) and 416.920(c)).**

A State agency directed consultative evaluation revealed the presence of the noted impairments. The record, at that point, was void of any evidence of any impairment. The consultant further advised that the claimant would be unable to perform any kind of heavy labor. Based on the consultant's opinion, as well as the remaining evidence of record, the undersigned finds that the claimant's severe impairments are more than slight abnormalities that cause more than slight limitation in his ability to perform physical work activity. Accordingly, the highlighted impairments are severe.

At different points in the claims process the claimant has also alleged abdominal impairment/pain, and numbing and tingling affecting his right hand. He failed to mention abdominal pain during the consultative examination. He also failed to mention such pain when he testified. He visited the emergency room twice after the consultative evaluation—this is the only other medical evidence of record.

He did not mention his hand during either visit. One emergency room visit concerned his abdominal pain. However, he advised treating personnel that the pain was mild. Radiological diagnostic measures failed to reveal any abdominal impairment. He received minimal treatment and was discharged. During his second emergency room visit, he did not complain of any abdominal pain. He also failed to mention any abdominal pain when he testified.

The undersigned has reviewed the evidence of record and finds that there is no medically determined basis for his complaints regarding his hand or abdomen. In the alternative the undersigned notes that assuming some infrequent symptoms consistent with his reports, the evidence or record indicates that his symptoms reflect, at best, slight abnormality, that causes little, if any, limitation in his capacity for work activity. They are therefore nonsevere.

**4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

.        .        .

**5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of  light work as defined in 20 CFR 404.1567(b) and 416.967(b).**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

The claimant asserts that he suffers with back problems that cause pain and weakness. He suffered a back injury. He also experiences stomach pain. He noted that there were no efforts at any accommodation prior to his conclusion that he could no longer work. He also completed a report regarding his pain. He advised that lower back pain began when he served in the Navy. He did not provide dates. He advised that the pain radiates down his right leg. It does not spread to any other location. Prolonged standing, sitting, and walking exacerbate the pain. The pain is constant "but not a[s] bad all the time". He takes no prescription medication for his pain. He uses over-the-counter medication two-to-three times a day. He has used these medications for about a year. Nevertheless, despite using the medications for a year, they do not provide relief. They

do not cause side effects. He does not use any assistive device to relieve pain. Pain began to affect his activities about a year before he completed the form. He completed the form on September 22, 2010.

.     .     .

The claimant asserts that pain began to affect his capacity for work activity approximately September 2009. However, despite the reported affects, the claimant opted to use over-the-counter medication for an entire year, despite the fact that the medication offered no relief. Per his statements, it should be safe to assume that earnings in 2009—as he did not become disabled until September thereof—would have been used to procure medical care and perhaps medication that might relieve his symptoms.

.     .     .

The totality of his presentation strongly suggests that his impairments did not suddenly prevent him from working in September 2009. However, just as Agency guidance does not allow his subjective reports to confirm severe impairment, neither does it allow such a conclusion, or lack thereof, based solely on the undersigned's impression of the nonmedical evidence.

However, the medical evidence offers no more support for his allegations than the nonmedical evidence. The disability report requires the claimant to list all providers relevant to his alleged impairments. The claimant listed the Boston Medical Center and the Brigham and Women's [H]ospital. Both facilities are located in Boston. Of greatest significance, the claimant reported that he last visited both facilities in 1999.

He did not reference any recent routine, urgent, or emergency care. Therefore, even if the claimant could not afford medical care, consistent with his most recent earnings, he clearly made no effort to pursue any care whatsoever, despite experiencing allegedly disabling pain and limitations. The State agency contacted another facility, a local facility, on behalf of the claimant. However, that facility responded that there were no records regarding the claimant within the period of 2003 through the date of the request in 2010.

Digressing briefly, the undersigned notes that he did visit an emergency room this year. However, this does not lend weight to his allegations. To the contrary, it reflects upon the fact that he sought no such care contemporary with his pursuit of disability compensation.

The claimant clearly failed in his burden to provide medically determinable evidence consistent with his allegations. Nonetheless, the State agency directed a consultative evaluation.

The claimant advised the consultant that he applied for compensation secondary to back pain. Once again, he reported that pain has lasted for approximately a year. He reported that he was struck by a car in 1971 and broke his right leg. There is no evidence of this in the record. However, the claimant conveniently explained that he did not require surgery nor was he hospitalized. He knew of no other injury that might affect his back. Nevertheless, his back hurts all the time and the pain radiates from his right low back into his leg. He also experiences numbing and tingling down to his foot. He also reported numbing and tingling in his right hand. Contrary to his allegation of stomach pain, he made no comment regarding his stomach.

.      .      .

[The consultant] noted that x-rays of the lumbar spine revealed degenerative disc disease at L5 on S1 and pronounced on L3-L5 posteriorly. Examination of the claimant's abdomen was unremarkable. Examination of his extremities revealed no clubbing, cyanosis or edema. Neurological examination revealed diffuse 5/5 muscular strength in all ranges of motion through the upper and lower extremities. He was hyperflexic at ¾ bilaterally. There was a positive straight leg raise on the right in a seated position up to about 45 degrees. He was unable to heel or toe walk. He was able to touch his toes; however, he was very stiff and had to bend at the knees in order to complete the task. He squat and stood while holding on to the exam table and had to pull himself back up. His back was straight. However, there was quite a bit of muscular spasm on the right paravertebral musculature. Ultimately, he opined that the claimant suffers low back pain with radicular symptoms with degenerative disc disease. As noted previously, he advised that the claimant was not capable of heavy work activity.

[The consultant] did not preclude light work activity as reflected in his residual functional capacity highlighted above. The State agency denied his claim. The claimant appealed. Although he did not mention any symptoms [in] reference [to] his stomach during the consultative evaluation, he reported that his stomach pain is more severe. Pain level was six. These changes occurred less than two weeks after his claim was denied. He did not mention any worsening in his musculoskeletal impairment. In fact, he did not mention his back at all.

Once again, he reported the use of over-the-counter medication. He did not report any routine, urgent, or emergency medical care. The claimant's actions are not consistent with the content of his appeal.

Despite his original allegations and the representations contained in his appeal, the evidence reveals that the claimant's first pursuit of medical care did not come until April 2011, over two years after alleged onset, and five months after his appeal. His sole complaint was of abdominal pain. A review of systems was completed. A review of systems is the phase of an

examination during which the claimant is asked to provide symptoms for any impairment, even if not related to his allegations. The claimant reported no musculoskeletal or neurological symptoms. Interestingly, the record strongly suggests that the claimant was employed. However, that limited evidence standing alone did not preclude completion of the sequential process.

As to his reported symptoms, he advised that his maximum and current pain were both mild. He was specifically asked about back pain and there is no indication of any. Diagnostic imaging of his abdomen failed to reveal any abnormality. He was treated and released. It does not appear he was given any medication and there were no restrictions on his activities. The claimant's visit to the emergency room on this occasion detracts greatly from his allegations. The visit failed to indicate any severe limitation. Equally as telling it strongly indicates, as noted earlier, that if the claimant experiences truly troubling symptoms, then he would have sought medical care; care that up until his next emergency room visit, he [] has failed to seek in relationship to his original allegations.

He did not seek any additional medical care for an additional five months. He returned to the emergency room on September 6, 2011. The claimant complained of back pain. However, the notes indicate that there was no report of chronic history. The claimant advised that onset was the day before. He also advised that the maximum and current severity of pain [was] mild with a specific pain score of "5".

Treating personnel once again completed a review of systems. The claimant denied abdominal pain. Interestingly, the claimant reported that he *walks frequently and suffers no limitation in mobility*. The physician examined him and noted that he was in no distress. The physical examination was grossly unremarkable. He was assessed for acute myofascial lumbar strain. He received injections for pain. He was discharged home in good condition. He was prescribed Etodolac and Flexeril. There are no indications of any restrictions on daily or work activities.

The record is void of any additional medical evidence. As noted, the claimant testified. However, the claimant failed to explain the lack of medical care that might offer some support for his allegations. The minimal medical evidence in this case simply does not offer the undersigned medical determination of impairment or limitation greater than that suggested by the consultant. The claimant has failed in his burden to provide medically determinable or even objective evidence consistent with his allegations.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's concerning the intensity, persistence and limiting effects of these

symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

In sum, the above residual functional capacity assessment is supported by the State agency consultant's opinion as well as the total lack of evidence contrary to his opinion.

**6.     The claimant is capable of performing past relevant work as a security guard. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).**

The vocational expert testified that the claimant has past work as a security guard. The claimant's handwritten work history report indicates that he served as a security guard from 2004 to 2005. However, a review of his specific employer earnings indicates that he served as a security guard in 2006. It also suggests that he did not serve in that capacity for an entire year, as his earnings were only $2,170.50. It also suggests that he worked in the construction industry during 2004-2005.

While both periods are within the last 15 years, meeting the recency requirements to find past relevant work, and although the work is unskilled and would not require more than three months for the claimant to become proficient—per the vocational expert—the evidence does not clearly show that he engaged in substantial gainful activities per earnings.

Therefore, while the undersigned believes that he possesses past relevant work as a security guard, and in comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed, the undersigned nonetheless asked the vocational expert to provide examples of other jobs existing in the economy that he is able to perform.

Therefore, the Administrative Law Judge makes the following alternative findings for step five of the sequential process.

.     .     .

In the alternative, considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant can also perform.

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a

given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile. When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations. If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking. More specifically, the vocational expert provided the following representational occupations[:] garment folder (DOT#369.687-018, light, unskilled, 500,000 positions nationally, 13,000 locally); inspector (DOT#559.687-074, light, unskilled, 400,000 positions nationally, and 9,000 locally); and inserter (DOT#794.687-058, light, unskilled, 300,000 positions nationally, and 4,000 locally)[.]

Based on a residual functional capacity for the full range of light work, [and] considering the claimant's age, education and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 202.21 and Rule 202.14.

**7.     The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2009, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).**

(Tr. 24-25, 25-26, 26-27, 27-28, 28-30 & 30-31 (internal citations omitted; emphasis in original).)  The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving that he is unable to perform his previous work.  *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:  (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  *Id.* at 1005. Once the claimant meets this burden, as is the arguable case

here,[2] it becomes the Commissioner's burden to prove that the claimant is capable, given his age, education and work history, of engaging in another kind of substantial gainful employment, which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he can perform the full range of light work, and, even more specifically, those light jobs identified by the vocational expert, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3]

In this case, the plaintiff contends that there is no support for the ALJ's RFC assessment—since the record is devoid of any RFC assessment from an examining physician—and, further, the Commissioner's decision denying benefits should be reversed because the ALJ failed to include a function-by-function assessment in his RFC assessment as required by SSR 96-9p.[4]

---

[2]     The ALJ in this case "alternatively" reached the fifth step of the Commissioner's sequential evaluation process. His actions in reaching the fifth step, based upon his suggestion that the evidence did not clearly establish that plaintiff engaged in substantial gainful employment as a security guard, clearly defines for this Court that its analysis should be framed by step five of the sequential evaluation process.

[3]     This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

[4]     Included in this second assignment of error is plaintiff's contention that the ALJ erred in failing to include additional limitations consistent with Dr. Huey Kidd's consultative assessment, namely "any [] limitations regarding [plaintiff's] use of his lower extremities or (Continued)

Prior to considering the claims of error raised by plaintiff, the Court need set

forth the proper analysis for consideration of RFC "issues" raised in cases like the

---

right hand." (Doc. 14, at 12.) The Court does not find this additional argument compelling. First, insofar as his right hand is concerned, Dr. Kidd only noted that plaintiff complained of "some numbness and tingling in his right hand[]" (Tr. 226) but nowhere indicates any positive examination findings with respect to that hand (Tr. 227). Moreover, the ALJ specifically found that Foster's right hand complaints constitute a non-severe impairment (Tr. 25), a finding which plaintiff does not attack in his brief (*see* Doc. 14). Because a non-severe impairment is, by definition, one which does not significantly limit a claimant's physical abilities to perform basic work activities, *see, e.g.,* 20 C.F.R. § 404.1521(a) (2013), the ALJ did not err in "failing" to attribute any limitations to Foster's right hand. As for the argument directed to plaintiff's "lower extremity" complaints, the undersigned finds that the ALJ necessarily attributed such limitations in this case by finding that Foster was relegated to the performance of the full range of light work, as opposed, for instance, to the full range of medium work. *Compare* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.") *with* 20 C.F.R. § 1567(c) ("Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.") and SSR 83-10 ("'Frequent' means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work. . . . The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward.) However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semiskilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time."). This determination is bolstered by the hypothetical posed to the vocational expert at the hearing—a hypothetical to which no objection was interposed during the hearing (Tr. 47) nor in plaintiff's brief filed in this Court (*see* Doc. 14)—which assumed an individual with "the exertional capabilities and limitations reflected in the consultative examination of Doctor Huey Kidd," (Tr. 47) and the VE's answer wherein she identified several light, unskilled jobs that such hypothetical person could perform (*id.* at 47-48).

instant one. The Eleventh Circuit has made clear that "[r]esidual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Peeler v. Astrue*, 400 Fed.Appx. 492, 493 n.2 (11th Cir. Oct. 15, 2010), citing 20 C.F.R. § 416.945(a). Stated somewhat differently, "[a] claimant's RFC is 'that which [the claimant] is still able to do despite the limitations caused by his . . . impairments.'" *Hanna v. Astrue*, 395 Fed.Appx. 634, 635 (11th Cir. Sept. 9, 2010), quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). "In making an RFC determination, the ALJ must consider all the record evidence, including evidence of non-severe impairments." *Hanna, supra* (citation omitted); *compare* 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1) (2011) ("We will assess your residual functional capacity based on all the relevant evidence in your case record.") *with* 20 C.F.R. §§ 404.1545(a)(3) & 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence.").

From the foregoing, it is clear that the ALJ is responsible for determining a claimant's RFC, a deep-seated principle of Social Security law, 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level under § 404.929 or at the Appeals Council review level under § 404.967, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity."); *see also* 20 C.F.R. § 416.946(c) (same), that this Court has never taken issue with. *See, e.g., Hunington ex rel. Hunington v. Astrue*, No. CA 08-0688-WS-C, 2009 WL 2255065, at *4 (S.D. Ala. July 28, 2009) ("Residual functional capacity is a determination made by the ALJ[.]") (order adopting report and recommendation of the undersigned). The regulations provide, moreover, that while a claimant is "responsible for providing the evidence [the ALJ] . . .

use[s] to make a[n] [RFC] finding[,]" the ALJ is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary," and helping the claimant get medical reports from his own medical sources. 20 C.F.R. §§ 404.1545(a)(3) & 416.945(a)(3). In assessing RFC, the ALJ must consider any statements about what a claimant can still do "that have been provided by medical sources," as well as "descriptions and observations" of a claimant's limitations from his impairments, "including limitations that result from [] symptoms, such as pain[.]" *Id*.

In determining a claimant's RFC, the ALJ considers a claimant's "ability to meet the physical, mental, sensory, or other requirements of work, as described in paragraphs (b), (c), and (d) of this section." 20 C.F.R. §§ 404.1545(a)(4) & 416.945(a)(4).

> (b)   *Physical abilities*.   When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

> (c)   *Mental abilities*.   When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past work and other work.

> (d)   *Other abilities affected by impairment(s)*.   Some medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions, may cause limitations and restrictions which affect other work-related abilities. If you have this type of impairment(s), we consider any resulting limitations and restrictions which may reduce your ability to do past work and other work in deciding your residual functional capacity.

20 C.F.R. §§ 404.1545(b), (c) & (d) and 416.945(b), (c) & (d).

Against this backdrop, this Court starts with the proposition that an ALJ's RFC determination necessarily must be supported by substantial evidence. *Compare Figgs v. Astrue,* 2011 WL 5357907, *1 & 2 (M.D. Fla. Oct. 19, 2011) ("Plaintiff argues that the ALJ's residual functional capacity ('RFC') determination is not supported by substantial evidence. . . . [The] ALJ's RFC Assessment is [s]upported by substantial record evidence[.]"), *report & recommendation approved,* 2011 WL 5358686 (M.D. Fla. Nov. 3, 2011), and *Scott v. Astrue,* 2011 WL 2469832, *5 (S.D. Ga. May 16, 2011) ("The ALJ's RFC Finding Is Supported by Substantial Evidence[.]"), *report & recommendation adopted,* 2011 WL 2461931 (S.D. Ga. Jun. 17, 2011) *with Green v. Social Security Administration,* 223 Fed.Appx. 915, 923 & 923-924 (11th Cir. May 2, 2007) (per curiam) ("Green argues that without Dr. Bryant's opinion, there is nothing in the record for the ALJ to base his RFC conclusion that she can perform light work. . . . Once the ALJ determined that no weight could be placed on Dr. Bryant's opinion of [] Green's limitations, the only documentary evidence that remained was the office visit records from Dr. Bryant and Dr. Ross that indicated that she was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication. Thus, substantial evidence supports the ALJ's determination that Green could perform light work."). And while, as explained in *Green, supra*, an ALJ's RFC assessment may be supported by substantial evidence even in the absence of an opinion by an examining medical source about a claimant's residual functional capacity,[5] specifically because of

---

[5]     Despite that this approach has now been espoused by the undersigned since April of 2012, *see, e.g., Thomas v. Astrue,* 11-406-C, plaintiffs continue to cite to *Coleman v. Barnhart*, 264 F.Supp.2d 1007 (S.D.Ala. 2003) as controlling precedent (*see* Doc. 14, at 5-6) and the defendant continues to be enticed into submitting very lengthy (albeit worthless) castigations of
(Continued)

the hearing officer's rejection of such opinion,[6] 223 Fed.Appx. at 923-924; *see also id.* at 923 ("Although a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ."), **nothing** in *Green* can be read as suggesting anything contrary to those courts— including this one—that have staked the position that the ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.[7] *Compare, e.g.,*

---

*Coleman (see* Doc. 15, at 6-10). Needless to say, such briefing provides no assistance to the undersigned.

[6]      An ALJ's articulation of reasons for rejecting a treating source's RFC assessment must, of course, be supported by substantial evidence. *Gilabert v. Commissioner of Social Security,* 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) ("Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. In this case, therefore, the critical question is whether substantial evidence supports the ALJ's articulated reasons for rejecting Thebaud's RFC.") (citing *Moore v. Barnhart,* 405 F.3d 1208, 1212 (11th Cir. 2005)); *D'Andrea v. Commissioner of Social Security Admin.,* 389 Fed.Appx. 944, 947-948 (11th Cir. Jul. 28, 2010) (per curiam) (same).

[7]      In *Green, supra,* such linkage was easily identified since the documentary evidence remaining after the ALJ properly discredited the RFC opinion of the treating physician "was the office visit records from Dr. Bryant and Dr. Ross that indicated that [claimant] was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication." 223 Fed.Appx. at 923-924. Based upon such nominal clinical findings, the court in *Green* found "substantial evidence support[ing] the ALJ's determination that Green could perform light work." *Id.* at 924; *see also Hovey v. Astrue,* Civil Action No. 1:09CV486-SRW, 2010 WL 5093311, at *13 (M.D. Ala. Dec. 8, 2010) ("The Eleventh Circuit's analysis in *Green,* while not controlling, is persuasive, and the court finds plaintiff's argument . . . that the ALJ erred by making a residual functional capacity finding without an RFC assessment from a physician without merit. In formulating plaintiff's RFC in the present case, the ALJ—like the ALJ in *Green*—relied on the office treatment notes of plaintiff's medical providers.").

Therefore, decisions, such as *Stephens v. Astrue,* No. CA 08-0163-C, 2008 WL 5233582 (S.D. Ala. Dec. 15, 2008), in which a matter is remanded to the Commissioner because the "ALJ's RFC determination [was not] supported by substantial and tangible evidence" still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that "substantial and tangible evidence" **must—in all cases—include** an RFC or PCE from a (Continued)

*Saunders v. Astrue,* 2012 WL 997222, *5 (M.D. Ala. Mar. 23, 2012) ("It is unclear how the ALJ reached the conclusion that Plaintiff 'can lift and carry up to fifty pounds occasionally and twenty-five pounds frequently' and sit, stand and/or walk for six hours in an eight hour workday, [] when the record does not include an evaluation of Plaintiff's ability to perform work activities such as sitting, standing, walking, lifting, bending, or carrying.") *with* 20 C.F.R. §§ 404.1545(b), (c) & (d) and 416.945(b), (c) & (d); *see also Packer v. Astrue,* 2013 WL 593497, *4 (S.D. Ala. Feb. 14, 2013) ("[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.").

    Indeed, the Eleventh Circuit appears to agree that such linkage is necessary for federal courts to conduct a meaningful review of an ALJ's decision. For example, in *Hanna, supra,* the panel noted that

> [t]he ALJ determined that Hanna had the RFC to perform a full range of work at all exertional levels but that he was limited to 'occasional hand and finger movements, overhead reaching, and occasional gross and fine

---

physician. *See id.* at *3 ("[H]aving rejected West's assessment, the ALJ **necessarily had to** point to a PCE which supported his fifth-step determination that Plaintiff can perform light work activity.") (emphasis added). But, because the record in *Stephens*

> contain[ed] no physical RFC assessment beyond that performed by a disability examiner, which is entitled to no weight whatsoever, there [was] simply no basis upon which this court [could] find that the ALJ's light work RFC determination [was] supported by substantial evidence. [That] record [did] not reveal evidence that would support an inference that Plaintiff [could] perform the requirements of light work, and certainly an ALJ's RFC determination must be supported by substantial and tangible evidence, not mere speculation regarding what the evidence of record as a whole equates to in terms of physical abilities.

*Id.* (citing *Cole v. Barnhart*, 293 F. Supp.2d 1234, 1242 (D. Kan. 2003) ("The ALJ is responsible for making a RFC determination, and he must link his findings to substantial evidence in the record and explain his decision.")).

manipulation.' In making this determination, the ALJ relied, in part, on the testimony of the ME. . . .

The ALJ's RFC assessment, as it was based on the ME's testimony, is problematic for many reasons. . . . [G]iven that the ME opined only that Hanna's manipulation limitations were task-based without specifying how often he could perform such tasks, it is unclear how the ALJ concluded that Hanna could occasionally engage in all forms of hand and finger movements, gross manipulation, and fine manipulation. . . .

The ALJ also agreed with the VE's testimony that, under the RFC determination, Hanna could return to his past work. **But this conclusion is not clear from the record.** The VE answered many hypothetical questions and initially interpreted the ME's assessment to mean that Hanna's gross manipulation abilities were unlimited and so, with only a restriction to fine manipulation, he could perform his past relevant work. In a separate hypothetical, the VE stated that a claimant could not return to his past work as a packaging supervisor if restricted to occasional fingering, handling, and gross and fine manipulation. The ALJ also did not include the ME's steadiness restriction in the RFC assessment; and the VE testified that a person restricted to handling that required steadiness would not be able to return to Hanna's past work.

**The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review.** The ALJ has not done so here. To the extent the ALJ based Hanna's RFC assessment on hearing testimony by the ME and VE, the assessment is inconsistent with the evidence. The ALJ did not explicitly reject any of either the ME's or VE's testimony or otherwise explain these inconsistencies, the resolution of which was material to whether Hanna could perform his past relevant work. **Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review Hanna's case.**"

395 Fed.Appx. at 635-636 (emphasis added and internal citations and footnotes omitted); *see also Ricks v. Astrue*, No. 3:10–cv–975–TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012) ("'The existence of substantial evidence in the record favorable to the Commissioner may not insulate the ALJ's determination from remand when he or she does not provide a **sufficient rationale to link such evidence to the legal conclusions reached**.' Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow him to explain the basis for his decision.") (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005))

(emphasis added); *cf. Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) ("The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.") (citation omitted).

Such linkage, moreover, may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the ALJ's decision. *See, e.g., Durham v. Astrue*, Civil Action No. 3:08CV839-SRW, 2010 WL 3825617, at *3 (M.D. Ala. Sep. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'") (quoting *Hanna*, 395 Fed. Appx. at 636 (internal quotation marks omitted)); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ could have relied . . . .  There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion].  However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support.  Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct.").

In this case, the Court finds that the ALJ linked his RFC assessment—that is, the full range of unskilled light work—to specific evidence in the record bearing upon Foster's ability to perform the physical, mental, sensory and other requirements of work. There is no question but that in this case the ALJ considered all the evidence or

record (*see* Tr. 24-31), developed the record by sending plaintiff for a consultative examination by Dr. Huey Kidd (*see* Tr. 226-227), and took into account any statements (or lack thereof) about what Foster can still do provided by medical sources and any descriptions and observations of limitations from his impairments (*compare id. with* Tr. 229-248; *see* Tr. 43-44). The ALJ copiously evaluated all of the foregoing evidence and unquestionably, in the undersigned's estimation, linked that evidence to his determination that plaintiff retains the residual functional capacity to perform the full range of light work. (*See* Tr. 24-31.) The ALJ's RFC determination is particularly appropriate given the dearth of evidence (*see* Tr. 226-248), none of which contains any observations/findings inconsistent with the full range of light work. Indeed, Dr. Huey Kidd's sole comment, after examining Foster, was that "it would be very difficult for th[e] [claimant] to do any kind of ***heavy*** labor." (Tr. 227 (emphasis supplied).)[8]  Thus, the undersigned concludes that plaintiff's first assignment of error is not well taken.

Plaintiff's other assignment of error is that the ALJ failed to include a "function-by-function assessment" in his RFC finding as required by Social Security Ruling 96-8p. (Doc. 14, at 9-12.)  In accordance with SSR 96-8p, the "RFC assessment must first identify the individual's functional limitations or restrictions and assess his . . . work-related abilities on a function-by-function basis, including the functions in paragraphs

---

[8]     Plaintiff's suggestion that there is no "medical evidence" to contradict his testimony regarding the limitations on his abilities to sit, stand and walk (*see* Doc. 14, at 8) is simply incorrect, as the ALJ explains at length in his opinion (Tr. 27-29). Indeed, the ALJ concluded that "the claimant's statements concerning the intensity, persistence and ***limiting effects*** of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity." (Tr. 29.) In addition, plaintiff's suggestion that the ALJ relied upon the RFC determination of a "single decision-maker" (Doc. 14, at 7-8) is incorrect because nowhere in his decision does the ALJ reference the determination of a "single decision-maker" (*see* Tr. 24-31).

(b), (c), and (d) of 20 CFR 404.1545 and 416.945.[9] Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, at 1 (footnote added). In ruling on a function-by-function issue presented to it, a panel of the Eleventh Circuit provided the following guidance:

> While the ALJ could have been more specific and explicit in his findings, he did consider all of the evidence and found that it did not support the level of disability Freeman claimed. Only after he determined that she failed to carry her burden of showing that she had become disabled from performing any of her work-related activities did he state that she could perform light exertional activity. Therefore, the ALJ complied with SSR 96-8p by considering Freeman's functional limitations and restrictions and, only after he found none, proceeding to express her residual functional limitations in terms of exertional levels. Furthermore, the ALJ's analysis of the evidence and statement that Freeman could perform light work indicated how much work-related activity she could perform because "light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10. The ALJ also told the VE that the hypothetical individuals they were discussing were limited to light exertional activity. Therefore, the ALJ's hypotheticals did have limitations on sitting, standing, and walking. In sum, the ALJ adequately analyzed and described Freeman's functional capacity.

*Freeman v. Barnhart,* 220 Fed.Appx. 957, 960, 2007 WL 861140, *2 (11th Cir. Mar. 23, 2007).[10] Thus, "[w]here an ALJ considers all of the evidence, determines that the claimant is not disabled, and also poses a hypothetical to a VE which limits the claimant to a certain level of exertional activity, [it has been] found that the ALJ complied with the requirements of SSR 96-8p." *Warren v. Astrue,* 2010 WL 3294186, *7 (N.D. Ga. Jul. 14,

---

[9]     Paragraph (b) of 20 C.F.R. §§ 404.1545 and 416.945 specifically provides that "[a] limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work." *Id.*

[10]     "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

2010) (citing *Freeman, supra*), *report and recommendation adopted,* 2010 WL 3294182 (N.D. Ga. Aug. 20, 2010); *cf. Hall v. Astrue,* 2010 WL 2643565, *7 (S.D. Ala. Jun. 29, 2010) ("In *Freeman* . . ., the Eleventh Circuit held that an ALJ's failure to 'more specific[ally] and explicit[ly]' set forth his findings with respect to a claimant's 'functional limitations and work-related abilities on a function-by-function basis' is excusable where it is apparent the ALJ did 'consider all of the evidence.'").

In this case, as in *Freeman,* there is no question but that the ALJ could have been more specific and explicit in his findings with respect to Foster's functional limitations and work-related abilities on a function-by-function basis. However, the undersigned finds no reversible error in this regard inasmuch as the ALJ clearly considered all the evidence of record and found that such evidence did not support the level of disability Foster claimed. (Tr. 24-31.) Moreover, the ALJ's analysis of the evidence and his specific determination that Foster is capable of performing the full range of light work is an implicit indication of the work-related activities he found Foster capable of performing because—as previously indicated in this opinion—light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds[,]" 20 C.F.R. § 1567(b), and "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10. Finally, Dr. Kidd  indicated only that it would be "very difficult" for Foster to perform "any kind of heavy labor[]" based upon his objective findings and it was based upon a hypothetical question incorporating Dr. Kidd's noted "exertional capabilities and limitations" (Tr. 47) that the vocational expert identified several light, unskilled jobs existing in significant numbers in the national economy that the hypothetical individual could perform (*id.* at 47-48). Accordingly, like the Eleventh Circuit in *Freeman,* this

Court finds that "the ALJ adequately analyzed and described [plaintiff's] functional capacity." 220 Fed.Appx. at 960.[11]

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 9th day of August, 2013.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

[11]     The plaintiff also suggests in his brief that the ALJ erred in failing to re-contact Dr. Kidd for clarification regarding his limitations. (Doc. 14, at 12.) At the time of the hearing decision in this case, October 28, 2011 (Tr. 31), the regulations provided only that medical sources would be re-contacted when the evidence received from such a source was "inadequate" for the Administration to determine the question of disability. 20 C.F.R. § 404.1512(e) (2011). Notwithstanding that this subsection is no longer contained in the regulations, *see* 20 C.F.R. § 404.1512 (2013), the undersigned finds that the ALJ's implicit determination that the evidence received from Dr. Kidd was adequate to determine the question of Foster's disability was correct.